UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
(Dallas)

| | |
|---|---|
| In re:<br><br>CINNAMON EPLEY,<br><br>    Debtor. | Case No. 21-31797<br><br>Chapter 7 |
| NATIONWIDE JUDGMENT RECOVER, INC.,<br><br>    Plaintiff,<br>v.<br><br>CINNAMON EPLEY,<br><br>    Defendant. | Adversary Proc. No. _____ |

### COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

COMES NOW Nationwide Judgment Recovery, Inc. ("**Nationwide**"), the Plaintiff and a creditor in the above-styled action, by and through counsel, and pursuant to 11 U.S.C. §§ 523(a)(19) and (a)(2)(A), files this Complaint to Determine Dischargeability of Debt against Defendant, Cinnamon Epley ("**Debtor**" or "**Defendant**"), and for causes of action states as follows:

### JURISDICTION

1. This adversary proceeding is brought in connection with the Debtor's case under Chapter 7 of Title 11 of the United States Code, Bankruptcy Case No. 21-31797 (the "**Bankruptcy Case**") now pending in this Court.  This Court has jurisdiction over this adversary

126350576v2

proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

2. In accordance with Fed. R. Bankr. P. 7008, Nationwide consents to the entry of final orders and judgments by this Court.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

4. Nationwide is a creditor of Debtor pursuant to that certain assignment of judgment (the "**Assignment**") executed in favor of Nationwide by Matthew E. Orso, in his capacity as court-appointed Receiver for Rex Venture Group, LLC d/b/a/ ZeekRewards.com, in the District Court for the Western District of North Carolina (the "**District Court**"), Case No. 3:14-cv-00091-GCM. A true and accurate copy of the Assignment is attached hereto as **Exhibit A**.

## OVERVIEW

5. The relief requested arises out of a judgment in the amount of $65,705.51 and entered against Defendant on August 14, 2017 in *Bell v. Disner*, Case No. 3:14-cv-00091-GCM (W.D.N.C. 2017) (the "**Net Winner Class Action**"), referred to herein as the "Final Judgment." A true and accurate copy of the Final Judgment is attached hereto as **Exhibit B** and is incorporated herein by reference.

6. Pursuant to the terms of the Final Judgment, post-judgment interest has accrued at the rate specified under 28 U.S.C. § 1961 from the date of entry of the Final Judgment up until the petition date.

## PROCEDURAL BACKGROUND OF FINAL JUDGMENT

7. On August 17, 2012, the Securities and Exchange Commission filed an action titled *Securities and Exchange Commission v. Rex Venture Group, LLC d/b/a ZeekRewards.com and Paul Burks*, Civil Action No. 3:12-cv-519 (the "**SEC Action**") to shut down a Ponzi scheme operated by Rex Venture Group, LLC d/b/a www.ZeekRewards.com ("**ZeekRewards**") in which more than 700,000 participants lost more than $700,000,000.

8. The SEC Action was brought against ZeekRewards due to ZeekRewards' violation of federal securities law. *See* S.E.C. Action, Compl., at ¶ 1 (stating that it was filed to "halt the fraudulent unregistered offer and sale of securities in unregistered investment contracts constituting securities in a combined Ponzi and Pyramid scheme perpetrated by Defendant Rex Venture Group, LLC"). A true and accurate copy of the Complaint in the SEC Action is attached hereto as **Exhibit C.**

9. As part of the SEC Action, the SEC appointed Kenneth D. Bell as Receiver of the estate of ZeekRewards and tasked him with initiating legal proceedings seeking to recover funds from the participants in the scheme who had obtained more than $1,000 from the scheme (the "**Net Winners**") and return them to the persons who had lost money to the scheme (the "**Net Losers**").

10. The Receiver, therefore, initiated the Net Winner Class Action, a clawback action seeking to void the fraudulent transfer of funds to the Net Winners and disgorge their profits ("**Net Winner Class Action**").

11. The Net Winner Class Action asserted claims for violation of the North Carolina Uniform Fraudulent Transfer Act ("**NCUFTA**"), Common Law Fraudulent Transfer, and

Constructive Trust as a result of the ZeekRewards Ponzi scheme that operated in violation of federal securities law.

12. Debtor was a Net Winner and a member of the Net Winner Class certified in the Net Winner Class Action.

13. In fact, the Receiver's records reflect that the Defendant "won" a total of approximately $53,693.97 from the scheme in just over eleven (11) months, despite "investing" only $4,767.75.

14. A true and correct copy of the financial statement showing the Debtor's payments into the ZeekRewards Ponzi scheme and her winnings (the "**Statement**") is attached hereto as **Exhibit D** and incorporated herein by reference.

15. On June 30, 2016, the Receiver moved for partial summary judgment on all issues of liability against members of the Net Winner Class, including Defendant.

16. On November 29, 2016, the Court issued its order granting the Receiver's motion for partial summary judgment (the "**Order**"). A true and correct copy of the Order is attached hereto as **Exhibit E**.

17. In the Order granting the Receiver's motion for partial summary judgment, the Court found that ZeekRewards operated as a Ponzi scheme in violation of federal securities law and that the Defendants' transfers in furtherance of the Ponzi scheme were fraudulent as violations of N.C. Gen. Stat. § 39-23.4(a)(1), the NCUFTA.

18. The Court also found that the intent to defraud could be presumed against the Net Winners because the transfers were in furtherance of the ZeekRewards Ponzi scheme.

19. The SEC Action also resulted in a finding that the ZeekRewards Ponzi scheme amounted to a violation of federal securities law. *See Securities and Exchange Commission v. Gilmond*, Civil Action No. 3:15CV91, 2017 WL 1147770, at *1 (W.D.N.C. March 27, 2017) (finding that ZeekRewards issued "fraudulent and unregistered…securities").

20. The Fourth Circuit affirmed the determination in the Net Winner Class Action that ZeekRewards was involved in the sale of fraudulent securities. *See Bell v. Brockett*, 922 F.3d 502, 505 (4th Cir. 2019) (finding that ZeekRewards sold an "opportunity to share in RVG's revenues").

21. On June 27, 2017, the Receiver filed a Motion to Enter Final Judgments Against the Net Winner Class Members, including Defendant, which was granted by the Court on August 14, 2017.

22. On December 17, 2019, Nationwide was assigned the full portfolio of judgments obtained against more than 6,700 Net Winners who participated and profited from ZeekRewards, including the Final Judgment against Defendant. *See* Ex. B.

23. The Final Judgment against Defendant entered in the Net Winner Class Action is a debt owed by Defendant for fraudulent transfers she received as a result of her participation in the ZeekRewards Ponzi scheme.

24. On April 28, 2020, Nationwide mailed via First Class Mail, postage prepaid, an initial notice of the Final Judgment to Defendant at her then address at 3501 N Juniper Rd, Apt 8B, Richardson, TX 75082-2214. A true and correct copy of the initial notice is attached hereto as **Exhibit F**.

25. This initial notice was not returned.

26. On September 1, 2020, the Final Judgment was registered in the District Court for the Western District of North Carolina. A true and correct copy of the registration is attached hereto as **Exhibit G**.

27. The Final Judgment was also recorded in Texas. A true and correct copy of the Official Notice of Texas Registered Judgment is attached hereto as **Exhibit H**.

28. On January 11, 2021, Nationwide sent to the Defendant via Priority Mail notice of the registration of the Final Judgment.

29. This mailing was not returned.

30. Nationwide also left voicemail messages with the Defendant regarding the Final Judgment. Specifically, Nationwide left voicemail messages in the following manner:

- Phone Number ▇▇▇-7660:[1] two messages dated January 4, 2021 and January 13, 2021, respectively.

- Phone Number ▇▇▇-7644: one message dated January 13, 2021.

31. Nationwide also sent numerous emails to the email address ▇▇▇▇▇▇▇▇▇@gmail.com which, upon information and belief, is the Defendant's email address.

32. Specifically, Nationwide sent twelve (12) emails to dallasreinvestorwoman@gmail.com on the following dates: April 22, 2020; May 5, 2020; May

---

[1] While Rule 9037 of the Federal Rules of Bankruptcy Procedure does not expressly require the redaction of phone numbers or email, Nationwide has redacted such information out of an abundance of caution. Nationwide shall file an unredacted complaint with the Court in the event that the Court or the Defendant makes such a request. Nationwide will also provide a copy of the unredacted complaint to Debtor's counsel in the main bankruptcy case via their listed email addresses.

126350576v2

11, 2020; June 2, 2020; June 17, 2020; July 13, 2020; July 16, 2020; February 3, 2021; February 8, 2021; February 12, 2021; February 15, 2021; and February 18, 2021.

33. All of the aforementioned emails registered as delivered and none of the emails "bounced back" due to being sent to a faulty or incorrect email address.

34. Notwithstanding, Defendant testified at the Section 341 Meeting of Creditors that she had no knowledge of the Final Judgment and that she had never received notice regarding the same.

35. Moreover, on May 10, 2022, Nationwide conducted its Bankruptcy Rule 2004 examination of the Defendant pursuant to the Court's order entered on April 20, 2022, which required that the Defendant appear for a Bankruptcy Rule 2004 examination and ordered the Defendant to produce certain documents to Nationwide in conjunction with the examination. Bankruptcy Case, D.I. 49 (the "**2004 Order**").

36. During the 2004 examination, Defendant testified that she had no knowledge of the Final Judgment and that she had never received any notice regarding the same.

37. Defendant also failed to produce any of the documents required to be produced by the 2004 Order.

38. Defendant, when questioned about these documents, testified that she did not even bother to look for any of the requested documents, despite the 2004 Order requiring her to do so.

## THE ZEEKREWARDS' SCHEME

39. To "invest" in ZeekRewards and be entitled to the venture's fictitious profits, participants had to become "Affiliates."

7

126350576v2

40. To become a qualified "Affiliate," such as Defendant, participants were required to do four things.

41. First, Affiliates were required to enroll in a monthly subscription plan requiring payments of $10, $50, or $99 per month. *See Bell v. Disner*, 3:14-cv-00091, 2016 WL 7007522, at *8 (W.D.N.C. Nov. 29, 2016) (issuing summary judgment on liability issues against the Net Winner Class) (the "**Summary Judgment Order**").

42. Second, Affiliates were required to enroll new penny auction customers personally, either through the ZeekRewards co-op program or through third-party businesses endorsed by ZeekRewards. *Id.*

43. Third, Affiliates were required to sell at retail or purchase and give away as samples a minimum of ten Zeekler.com bids, to earn something called "Profit Points." *Id.*

44. Lastly, affiliates had to place a daily free ad for Zeekler.com and submit proof of the ad being placed to ZeekRewards. *Id.*

**DEFENDANT'S PARTICIPATION IN THE ZEEKREWARDS' SCHEME**

45. The Receiver's records reflect that Defendant was an Affiliate and engaged in all of aforementioned activities to obtain the fraudulent proceeds of the Ponzi scheme.

46. Upon information and belief, Defendant knew that ZeekRewards was a Ponzi scheme.

47. The extreme percent of her winnings demonstrate that Defendant should have known that ZeekRewards was a Ponzi scheme.

48. Yet, despite her knowledge that ZeekRewards was a Ponzi scheme, she continued to participate in it by performing the duties of an "Affiliate."

49. The Receiver's records reflect that Defendant recruited at least one (1) individual, Stephanie Wilson, to participate in the scheme.

50. The Receiver's records reflect that Defendant set up an Affiliate account in her own name under which she participated in ZeekRewards' activities.

51. The Statements show that Defendant made payments totaling $4,450.75 towards "Bid Purchases" and $317.00 in "Subscription Payments."

52. The Statements also show that Defendant received fraudulent transfers from the scheme totaling $53,693.97.

53. As part of her active participation in the ZeekRewards Ponzi scheme, the Defendant received a number of fraudulent transfers that resulted in her being designated a member of the Net Winner Class.

54. The Final Judgment against Defendant is accordingly a result of her fraudulent conduct and her active and knowing participation in a Ponzi scheme that violated federal securities law and precipitated Defendant's bankruptcy filing.

55. As a Net Winner, *all* of the proceeds that Defendant received came from the investments of victims. *See* Net Winner Class Action, 2016 WL 7007522, at *3.

56. Further, *all* of the proceeds that Defendant received from ZeekRewards accrued as the result of a violation of federal securities law committed by ZeekRewards and aided and abetted by Defendant.

57. Furthermore, Defendant intentionally acted in a fraudulent manner through her creation of an Affiliate account and her recruitment of at least one other individual.

### COUNT I: Relief Under 11 U.S.C. § 523(a)(19)

58. Plaintiff incorporates Paragraphs 1-57 of the above as if restated fully herein.

59. 11 U.S.C. § 523(a)(19) provides that a Chapter 7 discharge does not discharge a debt that:

   A. is for –
      i. the violation of any of the Federal securities laws…; or
      ii. common law fraud, deceit, or manipulation in connection with the purchase or sale of a security; and

   B. results, before, on, or after the date on which the petition was filed, from –
      i. any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
      ii. any settlement agreement entered into by the debtor; or
      iii. any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

60. In sum, 11 U.S.C. § 523(a)(19) precludes dischargeability of a debt if (1) the debt is for the violation of securities law OR for common law fraud, deceit, manipulation in connection with the purchase or sale of any security; and (2) the debt is memorialized in a judicial or administrative order or settlement agreement.

61. Defendant obtained her Net Winnings as a result of the violation of the Federal securities laws. *See Securities and Exchange Commission v. Gilmond*, Civil Action No. 3:15CV91, 2017 WL 1147770, at *1 (W.D.N.C. March 27, 2017); *Bell v. Brockett*, 922 F.3d 502, 505 (4th Cir. 2019).

62. Defendant also facilitated ZeekRewards' violation of the securities laws by performing her duties as an Affiliate despite having knowledge that ZeekRewards was a Ponzi scheme.

63. Defendant also obtained her Net Winnings through the use of "common law fraud, deceit, or manipulation in connection with the purchase or sale of any security" as required by 11 U.S.C. § 523(a)(19).

64. Upon information and belief, Defendant worked to enroll others into the scheme despite having knowledge that it was a scheme and without revealing that fact to the persons she enrolled.

65. Defendant performed the actions of an Affiliate in order to maximize ZeekRewards' ability to pay her and in order to maintain her "Affiliate" status with the program.

66. The Final Judgment against Defendant was issued to reclaim the Net Winnings that Defendant obtained through the violation of the federal securities laws and through her own deceitful actions.

67. Accordingly, the Final Judgment against Defendant should be found non-dischargeable pursuant to 11 U.S.C. § 523(a)(19). *See In re Lunsford,* 848 F.3d 963 (11th Cir. 2017).

## COUNT II: Relief Under 11 U.S.C. § 523(a)(2)(A)

68. Plaintiff incorporates paragraphs 1-67 of the above as if restated fully herein.

69. 11 U.S.C. § 523(a)(2)(A) provides that bankruptcy does not discharge an individual from any debt that is "(2) for money…to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

70. This means that a debt is not dischargeable under this statute if it was for money obtained by false pretenses, a false representation, or actual fraud.

71. Under Supreme Court precedent, this includes cases where the debtor is a recipient of a fraudulent transfer who assisted the fraud. *See Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 356, 359-60 (2016).

72. Defendant committed actual fraud by receiving the fraudulent transfers that form the basis of the Final Judgment and by participating in the scheme.

73. As described above, Defendant committed actual fraud by engaging in her Affiliate activities despite, on information and belief, her knowledge that ZeekRewards was a Ponzi scheme.

74. As described above, Defendant committed actual fraud by facilitating the ZeekRewards scam in order to maximize her potential payout, including through her creating an Affiliate account and recruiting others to join the scheme.

75. Indeed, violation of the North Carolina Uniform Fraudulent Transfer Act, which forms the basis of the Final Judgment, required finding that Defendant obtained her Net Winnings "with the intent to hinder, delay, or defraud any creditor of the debtor." *See* N.C. Gen. Stat. §§ 39-23.4(a)(1) (the "NCUFTA" requirements); *Bell v. Disner*, 3:14-cv-00091, 2016 WL 7007522 (W.D.N.C. Nov. 29, 2016) (issuing summary judgment against Defendant and other Net Winners on the issue of liability for violation of the NCUFTA).

76. Defendant's fraudulent intent can be presumed due to the Ponzi scheme presumption, which holds that "proof of operation of a Ponzi scheme is sufficient to establish actual intent to hinder, delay, or defraud creditors." *Bell*, 2016 WL 7007522, at *11 (collecting cases standing for this proposition).

13

77. As such, the Final Judgment should be non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Plaintiff Nationwide Judgment Recovery, prays that the Final Judgment be held nondischargeable pursuant to 11 U.S.C. §§ 523(a)(19) and 523(a)(2)(A), and for all other relief this Court may deem appropriate.

[SIGNATURES ON NEXT PAGE]

126350576v2

Dated: May 13, 2022                      Respectfully submitted,

                                                        *//s// Keith Wier*
Keith Wier, SBN: 21436100
MAURICE WUTSCHER LLP
5851 Legacy Circle, Suite 600
Plano, TX 75024
Telephone: 469-375-6792
Email: kwier@mauricewutscher.com
Local Counsel

Kay S. Kress (admitted pro hac vice)
Troutman Pepper Hamilton Sanders LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: 248-359-7300

Attorneys for Nationwide Judgment Recovery, Inc.

126350576v2